UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ELEUTERIO N., <br><br> Plaintiff, <br><br> v. <br><br> ANDREW M. SAUL, Commissioner of Social Security Administration, <br><br> Defendant. | Case No. CV 18-9556-SP <br><br> MEMORANDUM OPINION AND ORDER |

## I.

## **INTRODUCTION**

On November 12, 2018, plaintiff Eleuterio N. filed a complaint against defendant, the Commissioner of the Social Security Administration ("Commissioner"), seeking a review of a denial of a period of disability and disability insurance benefits ("DIB"). The parties have fully briefed the matters in dispute, and the court deems the matter suitable for adjudication without oral argument.

Plaintiff presents three disputed issues for decision: (1) whether the Administrative Law Judge ("ALJ") properly considered the opinion of a treating

1

physician; (2) whether the ALJ's residual functional capacity ("RFC") determination was supported by substantial evidence; and (3) whether the ALJ improperly rejected plaintiff's subjective symptom testimony. Memorandum in Support of Plaintiff's Complaint ("P. Mem.") at 2-7; *see* Memorandum in Support of Defendant's Answer ("D. Mem.") at 1-9.

Having carefully studied the parties' memoranda on the issues in dispute, the Administrative Record ("AR"), and the decision of the ALJ, the court concludes that, as detailed herein, the ALJ properly considered the opinion of plaintiff's treating physician, but the ALJ's RFC determination was not supported by substantial evidence, and the ALJ erred in rejecting plaintiff's subjective symptom testimony. The court therefore remands this matter to the Commissioner in accordance with the principles and instructions enunciated in this Memorandum Opinion and Order.

## II.

## **FACTUAL AND PROCEDURAL BACKGROUND**

Plaintiff, who was 52 years old on the alleged onset date, received a fifth grade education in Mexico. AR at 44, 53. Plaintiff has past relevant work experience as a construction miner. *Id.* at 50.

On June 4, 2015, plaintiff filed an application for DIB, alleging an onset date of October 1, 2007 due to a left hip replacement in 2012, spinal injury and surgery in 2011, skin cancer on his face and arms, and the need for a right hip replacement. *Id.* at 53. The Commissioner denied plaintiff's application initially, after which he filed a request for a hearing. *Id.* at 60-65.

On May 10, 2017, plaintiff, represented by counsel, appeared and testified at a hearing before the ALJ. *Id.* at 38-52. The ALJ also heard testimony from Abbe May, a vocational expert. *Id.* at 50-51. On July 21, 2017, the ALJ denied plaintiff's claim for benefits. *Id.* at 21-28.

2

Applying the well-known five-step sequential evaluation process, the ALJ found, at step one, that plaintiff had not engaged in substantial gainful activity between October 1, 2007, the alleged onset date, and December 31, 2012, the date last insured. *Id*. at 23.

At step two, the ALJ found plaintiff suffered from the following severe impairments: degenerative disc disease of the lumbar spine with bulging, lipping, stenosis, and radiculopathy; and degenerative joint disease of the left hip status post total left arthroplasty. *Id.* At step three, the ALJ found plaintiff's impairments, whether individually or in combination, did not meet or medically equal one of the listed impairments set forth in 20 C.F.R. part 404, Subpart P, Appendix 1 (the "Listings"). *Id*. at 24. The ALJ then assessed plaintiff's RFC,[1] and determined that through the date last insured of December 31, 2012, plaintiff had the RFC to perform the full range of medium work, with the limitations that he could: lift and carry 50 pounds occasionally and 25 pounds frequently; stand or walk for six hours in an eight-hour workday; and sit for six hours in an eight-hour workday. *Id.*

The ALJ found, at step four, that through the date last insured, plaintiff was unable to perform any past relevant work. *Id.* at 26.

At step five, the ALJ found – based on plaintiff's age, education, work experience, and RFC – there were jobs that existed in significant numbers in the national economy that plaintiff could have performed. *Id.* at 27. Consequently, the ALJ concluded that, for the relevant period, plaintiff did not suffer from a

---

[1] Residual functional capacity is what a claimant can do despite existing exertional and nonexertional limitations. *Cooper v. Sullivan*, 880 F.2d 1152, 1155-56 n.5-7 (9th Cir. 1989). "Between steps three and four of the five-step evaluation, the ALJ must proceed to an intermediate step in which the ALJ assesses the claimant's residual functional capacity." *Massachi v. Astrue*, 486 F.3d 1149, 1151 n.2 (9th Cir. 2007).

disability as defined by the Social Security Act. *Id.*

Plaintiff filed a timely request for review of the ALJ's decision, which was denied by the Appeals Council. *Id.* at 1-8. The ALJ's decision stands as the final decision of the Commissioner.

## III.

## STANDARD OF REVIEW

This court is empowered to review decisions by the Commissioner to deny benefits. 42 U.S.C. § 405(g). The findings and decision of the Social Security Administration must be upheld if they are free of legal error and supported by substantial evidence. *Mayes v. Massanari*, 276 F.3d 453, 458-59 (9th Cir. 2001) (as amended). But if the court determines the ALJ's findings are based on legal error or are not supported by substantial evidence in the record, the court may reject the findings and set aside the decision to deny benefits. *Aukland v. Massanari*, 257 F.3d 1033, 1035 (9th Cir. 2001); *Tonapetyan v. Halter*, 242 F.3d 1144, 1147 (9th Cir. 2001).

"Substantial evidence is more than a mere scintilla, but less than a preponderance." *Aukland*, 257 F.3d at 1035. Substantial evidence is such "relevant evidence which a reasonable person might accept as adequate to support a conclusion." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998); *Mayes*, 276 F.3d at 459. To determine whether substantial evidence supports the ALJ's finding, the reviewing court must review the administrative record as a whole, "weighing both the evidence that supports and the evidence that detracts from the ALJ's conclusion." *Mayes*, 276 F.3d at 459. The ALJ's decision "'cannot be affirmed simply by isolating a specific quantum of supporting evidence.'" *Aukland*, 257 F.3d at 1035 (quoting *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th Cir. 1998)). If the evidence can reasonably support either affirming or reversing the ALJ's decision, the reviewing court "'may not substitute its judgment for that

of the ALJ.'" *Id.* (quoting *Matney v. Sullivan*, 981 F.2d 1016, 1018 (9th Cir. 1992)).

## IV.

## DISCUSSION

### A. The ALJ Properly Considered Dr. Park's Opinion

Plaintiff argues the ALJ erred by rejecting the opinion of his treating physician, Dr. Kevin Park. P. Mem. at 2-4. Specifically, plaintiff argues the ALJ did not say what medical evidence was inconsistent with Dr. Park's opinion, and because Dr. Park provided the only medical opinion on plaintiff's RFC in the record, if his opinion is credited, plaintiff is unambiguously entitled to a finding of disability. *Id.*

In determining whether a claimant has a medically determinable impairment, among the evidence the ALJ considers is medical evidence. 20 C.F.R. § 404.1527(b).[2] In evaluating medical opinions, the regulations distinguish among three types of physicians: (1) treating physicians; (2) examining physicians; and (3) non-examining physicians. 20 C.F.R. § 404.1527(c), (e); *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996) (as amended). "Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's." *Holohan v. Massanari*, 246 F.3d 1195, 1202 (9th Cir. 2001); 20 C.F.R. § 404.1527(c)(1)-(2). The opinion of the treating physician is generally given the greatest weight because the treating physician is employed to cure and has a greater opportunity to understand and observe a claimant. *Smolen v. Chater*, 80 F.3d 1273, 1285 (9th Cir. 1996); *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).

Nevertheless, the ALJ is not bound by the opinion of the treating physician.

---

[2] All citations to the Code of Federal Regulations refer to regulations applicable to claims filed before March 27, 2017.

5

*Smolen*, 80 F.3d at 1285. If a treating physician's opinion is uncontradicted, the ALJ must provide clear and convincing reasons for giving it less weight. *Lester*, 81 F.3d at 830. If the treating physician's opinion is contradicted by other opinions, the ALJ must provide specific and legitimate reasons supported by substantial evidence for rejecting it. *Id.* Likewise, the ALJ must provide specific and legitimate reasons supported by substantial evidence for rejecting the contradicted opinions of examining physicians. *Id.* at 830-31. The opinion of a non-examining physician, standing alone, cannot constitute substantial evidence. *Widmark v. Barnhart*, 454 F.3d 1063, 1066 n.2 (9th Cir. 2006); *Morgan v. Comm'r*, 169 F.3d 595, 602 (9th cir. 1999); *see also Erickson v. Shalala*, 9 F.3d 813, 818 n.7 (9th Cir. 1993).

Because Dr. Park was the only medical source to provide an opinion on plaintiff's RFC, the ALJ was required to provide a "clear and convincing" reason for rejecting Dr. Park's uncontroverted opinion. *Lester*, 81 F.3d at 830. The ALJ rejected Dr. Park's RFC determination, which was based solely on plaintiff's limitations after his right hip surgery. *See* AR at 26, 291, 370. Dr. Park opined that, among other limitations, plaintiff could sit for more than two hours at a time, stand for up to two hours at a time, would need to walk every ten minutes for about five minutes at a time, would require a job that permits shifting positions at will, could frequently lift and carry ten pounds, occasionally lift and carry 20 pounds, and never lift or carry 50 pounds. *Id.* at 291-92, 373-74. The ALJ rejected Dr. Park's opinion for two reasons: (1) the opinion was inconsistent with the medical evidence in that Dr. Park stated plaintiff had only mild hip pain, but limited plaintiff to a reduced light RFC; and (2) Dr. Park amended his RFC assessment and changed the onset date of plaintiff's limitations from January 2016 to May 2012, but this change is inconsistent with evidence showing that plaintiff's right hip replacement surgery occurred in January 2016. *Id.* at 26.

The ALJ's first reason for rejecting Dr. Park's opinion is not a clear and convincing one. Dr. Park's RFC assessment describes plaintiff as having "mild hip pain," but also includes notes that support a finding of more severe limitations, such as that plaintiff has pain and decreased ambulation, his symptoms are often severe enough to interfere with attention and concentration, and he can stand for no more than two hours at a time. *Id.* at 370-76. "An ALJ may not cherry-pick a doctor's characterization of claimant's issues." *Fleenor v. Berryhill*, 752 Fed. Appx. 451, 453 (9th Cir. 2018) (citing *Ghanim v. Colvin*, 763 F.3d 1154, 1164 (9th Cir. 2014)). Relying on one description of plaintiff's symptoms to the exclusion of Dr. Park's other notes and findings is not a clear and convincing reason for rejecting Dr. Park's opinion.

But the ALJ's second reason – that Dr. Park changed the onset date of plaintiff's limitations from January 2016 to May 2012 – is a clear and convincing one that supports rejecting Dr. Park's opinion. Dr. Park's RFC assessment expressly states the limitations he assessed are based on plaintiff's right hip replacement. *Id.* at 370. In the amended assessment, Dr. Park changed the onset date of plaintiff's limitations from a date in January 2016 to May 23, 2012. *Id.* at 376; *see id.* at 294. The ALJ correctly noted that the record indicates plaintiff's right hip replacement surgery occurred on January 4, 2016, which would explain why Dr. Park first listed the onset date as one in that same month. *See id.* at 26, 345. Dr. Park's change to the onset date was thus contradicted by medical evidence showing that the limitations as assessed could not have existed in May 2012 because the cause of the limitations – the surgery – had not yet occurred. "The ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002).

Accordingly, although one of the ALJ's cited reasons for giving Dr. Park's

7

opinion little weight was not clear and convincing, the other reason cited by the ALJ was, and the ALJ properly considered and rejected Dr. Park's opinion, particularly given that plaintiff's date last insured was December 31, 2012.

**B.  The ALJ's RFC Determination Was Not Supported by Substantial Evidence**

Plaintiff argues the ALJ's determination that plaintiff had the RFC to perform a full range of medium work was not supported by substantial evidence. P. Mem. at 4-6.

RFC is what one can "still do despite [his or her] limitations." 20 C.F.R. § 404.1545(a)(1)-(2). The ALJ reaches an RFC determination by reviewing and considering all of the relevant evidence, including non-severe impairments. *Id.* When the record is ambiguous, the Commissioner has a duty to develop the record. *See Webb v. Barnhart*, 433 F.3d 683, 687 (9th Cir. 2005); *see also Mayes*, 276 F.3d at 459-60 (ALJ has a duty to develop the record further only "when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence"); *Smolen v. Chater*, 80 F.3d 1273, 1288 (9th Cir. 1996) ("If the ALJ thought he needed to know the basis of [a doctor's] opinion[ ] in order to evaluate [it], he had a duty to conduct an appropriate inquiry, for example, by subpoenaing the physician[ ] or submitting further questions to [him or her]."). This may include retaining a medical expert or ordering a consultative examination. 20 C.F.R. § 404.1519a(a). The Commissioner may order a consultative examination when trying to resolve an inconsistency in evidence or when the evidence is insufficient to make a determination. 20 C.F.R. § 404.1519a(b).

**1.  Treating Physicians**

Plaintiff's medical records reflect that he was treated by Dr. Park, an orthopedic surgeon, from March 19, 2007 through at least May 5, 2017. AR at

8

247-96, 369-77.  Plaintiff was also treated by Dr. Tomas Saucedo, an orthopedic surgeon, from December 12, 2007 to August 16, 2010.  *Id.* at 314-39.

        a.    **Dr. Kevin Park**

On March 19, 2007, Dr. Park examined plaintiff based on plaintiff's complaints of low back pain radiating down to his legs, groin pain, and pain with prolonged walking, and recommended an MRI of plaintiff's lumbosacral spine for possible epidural injections.  *Id.* at 247.  On March 22, 2007, Dr. Park reviewed the results of the MRI and found multi-level disc protrusion with evidence of spondylolisthesis with posterior disc bulge, mild to moderate lipping, and moderate to severe neural foramina stenosis.  *Id.* at 249.  During this examination, Dr. Park noted that plaintiff was requesting possible epidural injections, and recommended a referral to a different doctor for evaluation and treatment.  *Id.*

Dr. Park did not see plaintiff again until February 23, 2012, when plaintiff complained of a three-year history of left hip pain.  *Id.* at 250.  Dr. Park diagnosed degenerative joint disease of the left hip on this date, and noted that plaintiff required left total hip arthroplasty.  *Id.*  On May 21, 2012, plaintiff presented for a pre-operative visit for a left hip replacement surgery.  *Id.* at 252.  The record does not indicate when plaintiff's left hip replacement surgery took place. On July 13, 2012, plaintiff presented for a follow-up visit post left total hip arthroplasty.  *Id.* at 253.  At this visit, Dr. Park noted that plaintiff was doing fine and had an adequate range of motion, and recommended plaintiff continue with his home exercise program and follow up in three months for reassessment.  *Id.*

On July 2, 2013, Dr. Park examined plaintiff based on his complaints of right hip pain, which plaintiff reported as having started six months prior, and lumbar spine pain.  *Id.* at 254-56.  Dr. Park diagnosed plaintiff as having spondylolisthesis and severe degenerative disc disease in his spine, and moderate to severe degenerative disc disease in his right hip.  *Id.*

1    Dr. Park did not see plaintiff again until December 15, 2014, when plaintiff
2    complained of ongoing right hip pain. *Id.* at 257-58. During this examination, Dr.
3    Park noted that plaintiff's back was not bothering him, but recommended a right
4    total hip replacement with a follow-up visit to re-evaluate for surgery. *Id.*

5    On January 20, 2015, Dr. Park saw plaintiff based on his complaint of
6    moderate to severe back pain that, according to plaintiff, he had been experiencing
7    for the past five years. *Id.* at 259-61. During this visit, Dr. Park recommended
8    another MRI of plaintiff's spine. *Id.* On February 20, 2015, Dr. Park reviewed the
9    results of the MRI and diagnosed spondylolisthesis. *Id.* at 262-65. At this visit,
10   Dr. Park discussed treatment options with plaintiff and plaintiff stated he would
11   like to proceed with spinal surgery. *Id.* at 264. On April 7, 2015, plaintiff
12   presented for a pre-operative visit for spinal surgery. *Id.* at 266-69. The spinal
13   surgery took place on April 8, 2015, and on April 22, 2015, plaintiff presented for
14   a post-operative visit. *Id.* at 270-72. At this visit, plaintiff reported experiencing
15   only mild pain and being very happy with his surgery, and Dr. Park instructed
16   plaintiff to follow up in 42 days to take x-rays of the affected area. *Id.* at 270-72.
17   On June 3, 2015, plaintiff presented for his second post-operative visit, and
18   reported that he still had some pain to his spine and was still wearing his brace, but
19   that he was very happy with his surgery and his leg symptoms had gone away. *Id.*
20   at 273-75. Dr. Park recommended that plaintiff could stop wearing his brace, but
21   would, on a permanent basis, be limited to lifting no more than 15 pounds, no
22   repeated bending, twisting, lifting or carrying, and no prolonged standing, sitting,
23   or walking. *Id.* at 275.

24   Dr. Park continued to see plaintiff in 2015 and 2016 for general
25   examinations for back and right hip pain, and prescribed medication for plaintiff's
26   pain. *Id.* at 295-96, 345-65. On January 4, 2016, plaintiff had a right hip
27   replacement surgery. *Id.* at 345. On January 20, February 23, and April 5, 2016,

plaintiff presented for post-operative visits in which Dr. Park assessed plaintiff as doing well after the right hip replacement surgery, and recommended that plaintiff continue with his home exercise plan and NSAIDs. *Id.* at 345-56.

On January 29, 2016, Dr. Park completed a Residual Functional Capacity Questionnaire opining, as discussed above, that after plaintiff's right hip surgery, plaintiff could sit for more than two hours at a time, stand for up to two hours at a time, would need to walk every ten minutes for about five minutes at a time, would require a job that permits shifting positions at will, could frequently lift and carry ten pounds, occasionally lift and carry 20 pounds, and never lift or carry 50 pounds. *Id.* at 291-92. Dr. Park also opined that plaintiff did not have significant limitations in repetitive reaching, handling, or fingering, but would be able to bend or twist less than 10 percent of the time in an eight-hour work day, had no environmental restrictions other than avoiding concentrated exposure to extreme cold, and would likely be absent from work more than three times a month. *Id.* at 292-93. Finally, Dr. Park opined that the earliest date these symptoms and limitations applied was a date in January 2016. *Id.* at 294. As discussed above, on May 5, 2017, Dr. Park amended the Residual Functional Capacity Questionnaire so that the earliest date the relevant symptoms and limitations applied was May 23, 2012. *Id.* at 376. Dr. Park did not make any change to his substantive findings in the Questionnaire. *See id.* at 370-76.

    **b.** **Dr. Tomas Saucedo**

Although Dr. Saucedo's handwritten records are not totally clear, it appears Dr. Saucedo treated plaintiff for lower back pain and leg pain from December 12, 2007 to August 16, 2010 by prescribing medication. *Id.* at 314-39. Dr. Saucedo also referred plaintiff to specialists for MRIs of his spine and left hip. *See id.* at 318-21.

On January 7, 2008, Dr. Saucedo completed a medical evaluation supporting

plaintiff's claim for state disability benefits opining plaintiff would be unable to return to his regular or customary work from December 10, 2007 to April 15, 2008 because of his osteoarthritis. *Id.* at 322. On January 21, 2008, Dr. Saucedo completed another medical evaluation supporting plaintiff's claim for disability benefits from a laborers' union opining plaintiff would be totally disabled from December 12, 2007 to June 1, 2008 because of his osteoarthritis. *Id.* at 326. In April 2008, Dr. Saucedo completed a third medical evaluation supporting plaintiff's claim for disability benefits from a laborers' union opining plaintiff's disability began on December 12, 2008 and would end on March 17, 2009. *Id.* at 331-32. On August 16, 2010, Dr. Saucedo completed a fourth medical evaluation supporting plaintiff's claim for state disability benefits opining plaintiff's disability began on December 12, 2007 and would end on December 1, 2010. *Id.* at 339.

        2.       **<u>Dermatology Records</u>**

Although plaintiff appears to have requested dermatology records from October 2007 to December 2012, the medical provider returned the request, noting "[patient] not seen at this location till [sic] 2015." *Id.* at 284-85. Of the dermatology records that are before this court, the earliest record dates back to May 29, 2015 and none predates the date last insured of December 31, 2012. *Id.* at 298-311.

        3.       **<u>State Agency Physicians</u>**

As an initial matter, the parties appear to contest whether any state agency physician reviewed plaintiff's medical records. Plaintiff maintains the state agency review was conducted by a "single decision maker" ("SDM") who was not a physician and whose opinion on plaintiff's RFC would not be entitled to any weight. P. Mem. at 2. Plaintiff further argues there were no consultative examinations or testimony from a medical advisor at the hearing. *Id.* Defendant does not directly address plaintiff's argument, and contends the ALJ found, at least

with respect to plaintiff's right hip impairment, that no medically determinable impairment existed, "[i]n accord with the State agency-reviewing physicians." D. Mem. at 1.

Plaintiff is correct that no state agency physician reviewed plaintiff's medical records. Plaintiff's medical records were reviewed only by C. Oyeka, an SDM, who opined that plaintiff had a medically determinable impairment under Listing 1.04 (Spine Disorders) but that there was insufficient evidence to further evaluate the claim. AR at 53-58. The SDM determined that plaintiff was not disabled, but did not make an RFC determination or any other findings. *Id.* No other state agency medical examiner provided a medical opinion, nor did a medical expert testify at the hearing.

### 4. The ALJ's Findings

The ALJ determined plaintiff had the ability to perform the full range of medium work through the date last insured, including lifting and carrying 50 pounds occasionally and 25 pounds frequently, standing and walking for six hours in an eight-hour workday, and sitting for six hours in an eight-hour day. *Id.* at 24. In reaching this determination, the ALJ considered the objective medical evidence about plaintiff's degenerative joint disease in his spine, left hip, and right hip, rejected the opinions of Dr. Park and Dr. Saucedo, and gave little weight to plaintiff's subjective symptom testimony. *Id.* at 24-26. The ALJ did not consider opinions from any state agency physicians because there were no such opinions in the record. The ALJ also determined that there was no medically determinable right hip impairment prior to the date last insured. *Id.* at 25-26.

The issue here is whether the ALJ could solely rely on his own interpretation of the medical records in order to make an RFC determination or had a duty to develop the record. Apart from Dr. Park, whose opinion the ALJ rejected, no other physician reviewed plaintiff's medical records and provided an opinion about his

RFC. Thus, the ALJ's RFC determination concerning the severity and effect of plaintiff's spinal, left hip, and right hip impairments was solely based on his interpretation of plaintiff's treatment notes. But an ALJ may not act as his own medical expert because he is "simply not qualified to interpret raw medical data in functional terms." *Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999); *see Day v. Weinberger*, 522 F.2d 1154, 1156 (9th Cir. 1975) (ALJ should not make his "own exploration and assessment" as to a claimant's impairments); *Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir. 1996) ("ALJs must not succumb to the temptation to play doctor and make their own independent medical findings."); *Miller v. Astrue*, 695 F. Supp. 2d 1042, 1048 (C.D. Cal. 2010) (it is improper for the ALJ to act as the medical expert); *Padilla v. Astrue*, 541 F. Supp. 2d 1102, 1106 (C.D. Cal. 2008) (ALJ is not qualified to extrapolate functional limitations from raw medical data); *Afanador v. Barnhart,* 2002 WL 31497570, at *4 (N.D. Cal. Nov. 6, 2002) (ALJ failed to develop the record when she did not obtain a medical opinion concerning claimant's specific diagnosis).

The absence of a medical opinion is not necessarily fatal, but the RFC determination still must be supported by substantial evidence. *See Tackett v. Apfel*, 180 F.3d 1094, 1102-03 (9th Cir. 1999) (ALJ must provide evidentiary support for his interpretation of medical evidence). Defendant argues the ALJ based plaintiff's RFC on the totality of the record, and thus properly determined that plaintiff had the ability to perform at a medium exertional level, including lifting and carrying 50 pounds occasionally and 25 pounds frequently, prior to December 2012. D. Mem. at 4-6. The court disagrees. This was not a matter of the ALJ synthesizing all the medical evidence and opinions to reach an RFC determination. Plaintiff's treatment records, which are admittedly scant for some of the relevant time period, do not provide sufficient indications of plaintiff's functional limitations, and it is not clear how the ALJ determined plaintiff's RFC in the absence of any other

medical opinion. By the ALJ's own account, the RFC determination was based solely on: (1) the objective medical evidence; and (2) plaintiff's testimony about his limitations. *Id.* at 24-26.

It is thus unclear how the ALJ concluded plaintiff is capable of a full range of medium work. Once the ALJ rejected the opinion of Dr. Park, there was no other medical opinion in the record about plaintiff's functional limitations. It was improper for the ALJ to make an RFC determination based on his own lay interpretation of the medical evidence.

Accordingly, because the ALJ was not qualified to translate plaintiff's treatment notes into functional limitations, the RFC determination was not supported by substantial evidence.

**C.     The ALJ Failed to Properly Consider Plaintiff's Subjective Complaints**

Plaintiff also argues the ALJ erred by rejecting plaintiff's subjective symptom testimony on the ground that it was not supported by the objective medical evidence. P. Mem. at 6-7. Plaintiff argues this reason alone is not a clear and convincing reason for discounting his testimony, and also lacks specificity. *Id.*

The ALJ must clearly articulate specific reasons for the weight given to a claimant's alleged symptoms, supported by the record. Social Security Ruling ("SSR") 16-3p. To determine whether testimony concerning symptoms is credible, the ALJ engages in a two-step analysis. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007). First, the ALJ must determine whether a claimant produced objective medical evidence of an underlying impairment "'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Id.* at 1036 (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)). Second, if there is no evidence of malingering, an "ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Smolen*, 80 F.3d at 1281; *Benton v. Barnhart*,

331 F.3d 1030, 1040 (9th Cir. 2003). The ALJ may consider several factors in weighing a claimant's testimony, including: (1) ordinary techniques of credibility evaluation such as a claimant's reputation for lying; (2) the failure to seek treatment or follow a prescribed course of treatment; and (3) a claimant's daily activities. *Tommasetti*, 533 F.3d at 1039; *Bunnell*, 947 F.2d at 346-47.

At the first step, the ALJ found that plaintiff's medically determinable impairments could reasonably be expected to cause the symptoms alleged. AR at 24. At the second step, because the ALJ did not find any evidence of malingering, the ALJ was required to provide clear and convincing reasons for discounting plaintiff's testimony. Here, the ALJ discounted plaintiff's testimony because plaintiff's statements about the intensity, persistence, and limiting effects of his symptoms were not entirely consistent with the objective medical evidence. *Id.;* *see id.* at 26 ("the objective evidence does not support the claimant's allegations of severity prior to the DLI").

The lack of supporting objective medical evidence is a factor that may be considered when evaluating the credibility of a claimant's subjective complaints, but it is insufficient by itself. *See Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) (lack of corroborative objective medicine may be one factor in evaluating credibility); *Bunnell*, 947 F.2d at 345 (an ALJ "may not reject a claimant's subjective complaints based solely on a lack of objective medical evidence to fully corroborate the alleged severity of pain"). Here, the ALJ only cited lack of objective medical evidence, and therefore his reasoning is insufficient. Moreover, apart from stating that plaintiff's symptoms were not consistent with the medical evidence and other evidence in the record, the ALJ did not specifically identify which of plaintiff's statements he found to be not credible. *See Lester*, 81 F.3d at 834 ("General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's

complaints.").

Accordingly, the ALJ failed to cite a clear and convincing reason supported by substantial evidence to find plaintiff's subjective complaints less than fully credible.

## V.
## **REMAND IS APPROPRIATE**

The decision whether to remand for further proceedings or reverse and award benefits is within the discretion of the district court. *McAllister v. Sullivan*, 888 F.2d 599, 603 (9th Cir. 1989). It is appropriate for the court to exercise this discretion to direct an immediate award of benefits where: "(1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinions; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand." *Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014) (setting forth three-part credit-as-true standard for remanding with instructions to calculate and award benefits). But where there are outstanding issues that must be resolved before a determination can be made, or it is not clear from the record that the ALJ would be required to find a plaintiff disabled if all the evidence were properly evaluated, remand for further proceedings is appropriate. *See Benecke v. Barnhart*, 379 F.3d 587, 595-96 (9th Cir. 2004); *Harman v. Apfel*, 211 F.3d 1172, 1179-80 (9th Cir. 2000). In addition, the court must "remand for further proceedings when, even though all conditions of the credit-as-true rule are satisfied, an evaluation of the record as a whole creates serious doubt that a claimant is, in fact, disabled." *Garrison*, 759 F.3d at 1021.

Here, remand is required because the record must be more fully developed on remand before a disability determination can be made. On remand, the ALJ

shall further develop the record such as by retaining a consultative examiner or medical expert, and either credit the opinions or provide legally sufficient reasons supported by substantial evidence for rejecting them. The ALJ shall also reconsider plaintiff's testimony, and either credit his subjective complaints or provide clear and convincing reasons for rejecting them. The ALJ shall then reassess plaintiff's RFC, and proceed through steps four and five to determine what work, if any, plaintiff was capable of performing during the relevant period.

## VI.
## **CONCLUSION**

IT IS THEREFORE ORDERED that Judgment shall be entered REVERSING the decision of the Commissioner denying benefits, and REMANDING the matter to the Commissioner for further administrative action consistent with this decision.

DATED: March 20, 2020

SHERI PYM
United States Magistrate Judge